## J. S. SCHRIMSCHER v. THE STATE.

*No. 1413.    Decided November 18th, 1896.*

1. **Assault With Intent to Murder—Defense of Another—Manslaughter.**

On a trial for assault with intent to murder, where it appeared that defendant and one E., the injured party, were engaged in a conversation when one D came up with a large stick and struck E. from behind, felling him to the ground; and, E. drew his pistol, and in attempting to use it, it was discharged twice; D., in the meantime, continuing to shower blows upon him with the stick; and the pistol finally fell on the ground. About the time E.'s pistol was discharged the second time, defendant shot at E., while he was lying on the ground, and fired upon him two or more shots It also appeared that defendant knew all the facts connected with D.'s assault upon E. Held: There was no aggravated assault in the case, and, if death had resulted, the offense would have been murder and could not have been manslaughter, because there was no provocation by E., creating an adequate cause—his act, in drawing his pistol to defend himself against the attack of D., being one justified by law.

2. **Same.**

There is no authority which would mitigate to manslaughter a homicide when committed upon a person who was committing no crime, if the party slaying him was aware of all the facts.

3. **Same—Specific Intent—Aggravated Assault—Charge.**

On a trial for assault with intent to murder, where defendant testified, that he did not intend to kill deceased, but, all the witnesses, and the physical facts contradict him as to his intention, and his own statements are in conflict. Held: It was not error for the court to refuse to give in charge to the jury a special requested instruction, to the effect, that, "If they believed from the testimony, that defendant shot at E. without the specific intent to kill him, they will acquit him of the offense of assault with intent to murder, and proceed to inquire whether he is guilty of an aggravated assault."

DAVIDSON, Judge, dissenting to this last proposition, Holds: That the special instruction should have been given; because, there was testimony to the effect that defendant did not intend to kill E., viz: the testimony of defendant himself, who had the right to testify, and did testify, as to his intent. That such testimony being legitimately in the case, it was the duty of the court to submit the issue raised by it whether the court believed such testimony true or false.

APPEAL from the District Court of Lavaca.    Tried below before Hon. T. H. SPOONER.

Appeal from a conviction for assault with intent to murder; penalty, two years' imprisonment in the penitentiary.

The case is sufficiently stated in the opinion.

[No brief for appellant has come to the hands of the Reporter.]

*Mann Trice*, Assistant Attorney-General, for the State.

HURT, PRESIDING JUDGE.—Appellant was convicted of an assault with intent to murder, and his punishment assessed at two years in the penitentiary, and he prosecutes this appeal. A number of errors are assigned, but, as a disposition of the case turns upon an error assigned in the charge of the court, we will only notice that particular phase of the case in which the appellant insists that the court made an error in failing to give him a charge on aggravated assault. In order to present this question, we will summarize the facts of the case. The difficulty occurred in the town of Yoakum, in Lavaca County. On the morning of said day, Schrimscher went to the office of Gano Eads, and presented an account in favor of Bulwer Bros., against said Eads. Eads looked at the account, and told the defendant that he could not pay it. The defendant told him that Bulwer Bros. told him they would sue him if he did not. Eads then told him to tell the damn son-of-a-bitch that he would not pay them. Defendant said he did not want to carry the message to Bulwer Bros. Eads then told him he had nothing against him, but, as he had brought the message from them, he wanted him to deliver his message to them, but that he did not intend to hurt his feelings. The defendant then left, and went to the store of Bulwer Bros., and reported the matter to them. About 12 o'clock of said day, Eads started home to his dinner in company with one Jack Lawrence, who lived in the same direction. Their route was across the railroad track, and in the vicinity of one Henry Long's butcher shop. At this point they passed the defendant, Schrimscher, who was standing near the track. Before they passed him, Lawrence said to defendant, "What are you doing here?" He said, "Nothing." After they had passed him a few feet, he spoke to Eads, and told him to stop; he wanted to show him something. Eads stopped, and the defendant took a book out of his pocket, and began turning over the leaves as if he was looking for something. While he was doing this, one Dunn came up from the rear of Eads, with a large walking stick, and raised it as if to strike Eads. Lawrence, thinking he was in jest, told him "to hit him," and Dunn struck Eads over the head. The piece of beef he had in his right hand fell out, and Eads fell on his hands and knees. He attempted to draw his pistol with his right hand. Dunn grabbed it, and Eads pulled his pistol with his left hand, and attempted to shoot Dunn, but Dunn struck him again, and pushed the pistol down, and it fired between his legs. Dunn continued to strike him with the stick, and the pistol was discharged the second time. In the meantime he was knocked flat, and the pistol fell from his hand. At this juncture, and about the time Eads fired the second shot, the defendant shot at Eads lying on the ground; shooting at him twice or more. One Bill Sills then ran up, and caught the defendant, and told him not to shoot any more, as he had killed Eads. One of the shots of the defendant went through Eads' coat and vest. Eads was beat up pretty badly by Pat Dunn with the stick, and when the difficulty ended was very bloody, and in a dazed condition. It is in evidence that Pat Dunn was a brother-in-law of

Bulwer Bros., and that he was a much larger man than Eads. Also that Schrimscher had asked permission on that morning of a constable to serve a citation on a negro, who lived several miles from town, and had been deputized for that purpose by the constable. He testified, however, that he did not need the pistol to serve the citation. It was also in evidence that Dunn and Schrimscher, the defendant, had been at Long's butcher shop for some time before the dinner hour. This was off of their route home from their places of business, but was the ordinary traveled route of Gano Eads from his ordinary place of business to his home. Defendant himself testified that he delivered the message of Eads to Bulwer Bros., and they then gave him a letter to show to Eads, which was a letter that Eads had previously written to Bulwer Bros., and that he was trying to find said letter at the time Dunn struck Eads; that he thought it was in the book, but, as he was looking for it, Pat Dunn struck Eads, and he fell, and drew his pistol and fired; that he (defendant) drew his pistol and shot; that he did not want to kill Eads, and did not try to kill him; that he shot to stop the difficulty; that he shot to keep Eads from killing Dunn; and that he shot to keep Eads from killing him (defendant), but did not see Eads shoot at him. It was also elicited from this witness that Pat Dunn was present when he told Bulwer Bros. what Eads had said. On this statement of facts, the court charged, in effect, that if defendant and Dunn conspired to assault Eads, and that, in case said Eads should resist and defend himself, they intended to shoot and kill him, and that Dunn brought on the conflict by assaulting said Eads with a deadly weapon, and felled him to the ground, and that defendant, Schrimscher, then and there shot at said Eads with intent to take his life, he would be guilty of an assault with intent to murder. The court further charged the jury that, if they believed from the evidence that the defendant, Schrimscher, Dunn and Eads accidentally met, that the said Dunn provoked a difficulty with said Eads by unlawfully assaulting him with a stick, with intention to kill or do him serious bodily injury, and that defendant (Schrimscher) was present, and knew such fact, and voluntarily, with such knowledge, took part in said conflict, and shot at said Eads with intent to kill him, then he would be guilty of an assault with intent to murder. The latter charge of the court, after defining the general principles of self-defense, instructed the jury as follows: "Now, if you believe from the evidence that defendant was ignorant of the fact that Dunn provoked a difficulty with said Eads by assaulting him with the intention of killing him or doing him serious bodily injury, and you further believe that said Schrimscher took part in said conflict to prevent the said Eads from killing the said Dunn, or inflicting serious bodily injury upon him, and that, at the time he shot at said Eads, said Eads was in the very act of making such an unlawful and violent attack upon said Dunn as might result in the death of said Dunn, or serious bodily injury to him, then you will acquit him."

It is very doubtful whether this latter charge was called for by any

testimony in the case. Appellant evidently knew that Dunn provoked the difficulty. There was no question as to this fact. It is objected that the charge should have submitted aggravated assault and battery. This is the question in the case. Upon the State's theory that there was a conspiracy between Dunn and appellant, if this be true, aggravated assault and battery is not in the case. Let us suppose, however, that there was no conspiracy, that the assault made by Dunn was not contemplated by appellant. We then have this state of case: A. and B. are in conversation with one another. C. strikes B. with a stick, and fells him to the ground. A. is aware of all the facts attending the assault and battery. C. continues the blows after B. is down. B. draws a pistol, and attempts to shoot C., while being thus assaulted. A. shoots and kills B. Would he be guilty of murder or manslaughter? Now, to present it in another form: C. is making an unlawful and violent attack upon B. with a stick. B. draws a pistol while being thus attacked, and attempts to kill C. A. shoots and kills B. Would he be guilty of murder or manslaughter? We are aware of the fact that a third person can kill to prevent a felony. We are also aware of the fact that under Art. 677, Penal Code, 1895, a third person can kill, and be justified therein, to prevent an unlawful and violent attack made upon himself or another, though the unlawful and violent attack may not be a felony, but a misdemeanor. But we are not aware of any authority which would mitigate to manslaughter a homicide when committed upon a person who was committing no crime when the party slaying him was aware of all the facts. Now, if Eads had killed Dunn, the homicide would have been in the prevention of an unlawful and violent attack. It would have been committed while Dunn was in the very act of committing such unlawful and violent attack, and it would have been the only means that could have been used under the circumstances of this case to prevent the injury therefrom. This being the case, Eads would have been justifiable, and, as appellant was aware of all the facts, there is no excuse for his killing or attempting to kill Eads. To be manslaughter, the homicide must be the result of a passion aroused by an adequate cause. The provocation in this case was an act that was not in violation of the law, but an act which was justified by the law, and hence constituted no provocation to the appellant. Let us suppose that Eads, though assaulted, had used more force than was permitted by law, and that, if Dunn had killed him, he would have been guilty of manslaughter only, would the appellant, if he had killed him in prevention of this excessive violence, stand in the same shoes with Dunn? This is a very nice question, but it is not in this case. Eads did not use more force than the law permitted him to do. What he did, the law justified, and, as appellant was aware of all the facts, he cannot plead any necessity whatever.

The court instructed the jury in the main charge that, in order to convict of assault to murder, they must believe from the evidence that

appellant had the specific intent to kill. Appellant contends that this instruction was not sufficient under the circumstances of this case. He testified he did not intend to kill, and asked the court to instruct the jury, "if they believed from the testimony that defendant shot at Eads without the specific intent to kill him, they will acquit him of the offense of assault with intent to murder, and proceed to inquire whether he is guilty of an aggravated assault." It is contended that this charge should have been given, because there was evidence presenting this phase of the case, and it would have permitted the jury to have convicted him for a less degree of culpable assault than assault to murder; whereas the charge as given left no alternative but a conviction of an assault to murder or an acquittal. It is contended that, while the main charge may have submitted to the jury the specific intent to kill, yet the special charge should have been given, in the event the jury did not believe the intent to kill existed, in order that they might have convicted him of an aggravated assault. If appellant and Dunn conspired and agreed that Dunn should make an assault, and appellant shot not to kill, but to alarm Eads, then he would have been guilty of an aggravated assault, because of the serious bodily injury inflicted by Dunn. If, without conspiracy, appellant shot to alarm Eads, and not with the intent to kill, but to prevent his killing Dunn or himself, he would have been guilty of an aggravated assault, because of the use of a deadly weapon in a threatening manner. These propositions must rest upon the evidence in the case, or there was no error in refusing the requested charge. While it is true that appellant stated he did not intend to kill, yet this is not all that he stated. He states: "I drew my pistol and shot. Didn't want to kill Eads, and didn't try to kill him. I shot to stop the difficulty. I shot to keep Eads from killing Pat Dunn. Yes, I shot to keep Eads from killing me. No, I didn't see him shoot at me. Pat Dunn is a larger man than Eads. I don't know why I didn't catch Dunn, and stop him from hitting Eads. Yes, I was at the time an officer; was sworn in the morning, to serve citation for Mr. Jordan. No; I didn't need a pistol to serve a citation. Pat Dunn was present when I told Bulwer Bros. what Eads said." Three witnesses testified that appellant shot at Eads. It appears from the record that the first shot fired by the appellant was fired about the same time that the prosecutor's pistol was discharged the second time. The appellant fired twice after this. These last shots were fired at Eads after his pistol had fallen out of his hand, while he was lying on his back in the same dazed condition. Appellant used the pistol with both hands, and one shot passed through the clothing of Eads. Now, under this state of case, was it necessary for the court to submit to the jury the requested charge? Appellant states that he shot to prevent Eads from killing Dunn; that he shot to prevent Eads from killing himself. He admits that Eads was not attempting to shoot him. He does not question the fact that the last two shots were fired when Eads had no pistol in his hand. All the witnesses and the physical facts contradict him as to his intention. His own statements are

in conflict. He does not state that he did not shoot at Eads. He evidently did, because the ball cut Eads' clothing. He does not say that he did not intend to kill him. He says he shot to prevent his killing Dunn, and he certainly did not discharge his pistol in the air to have this effect. He says he shot to prevent Eads from killing him. To discharge his pistol in the air would not have this effect. This is a confession of the whole thing, for he intended to prevent himself from being killed, and evidently he shot with the intent to kill Eads. We do not believe that there is testimony in this record upon which the requested charge can be based. We have examined the record, and all of the questions presented, though we have not written upon all of them, and fail to find an error upon which this judgment should be reversed. In fact, we believe the record discloses a conspiracy on the part of Dunn and appellant to inflict serious bodily injury upon Eads, and, if Eads should resist, or attempt to protect himself, to kill him. The judgment is affirmed.

*Affirmed.*

---

DAVIDSON, JUDGE, dissenting.—With all deference to the opinion of my brethren, I beg leave to enter my dissent from the opinion affirming the judgment against appellant for assault with intent to murder. Appellant requested a special instruction submitting the law of aggravated assault to the jury. The charge was refused, and appellant reserved an exception in due form to such action of the court. I agree to all that portion of the opinion which holds, in effect, that it would constitute assault to murder if appellant and Dunn conspired to kill Eads, the alleged assaulted party, or if they agreed to give him a severe beating, and in case it became necessary, to inflict such beating, to kill him, if he resisted. In either event I agree that this would have been an assault with intent to murder, and, had the evidence stopped here, the court would have been justified in refusing to give the charge requested. Even if the defendant had of his own volition, independent of Dunn, fired at Eads with intent to kill him, he would be guilty of an assault with intent to murder. In other words, it is immaterial which view the jury may have taken of the testimony; if that testimony led them to believe beyond a reasonable doubt that the defendant intended to kill Eads at the time he fired the shot, he would clearly be guilty of an assault with intent to murder. The specific intent to kill is the test of the offense of assault with intent to murder. But, if such was not his intent, then his offense would be of less grade of assault. Now, bearing upon the question of aggravated assault, the facts are as follows: Dunn struck Eads with a large walking cane or stick. Eads drew his pistol, and fired. Appellant testifies in this connection, that, when this was done: "I drew my pistol, and shot. I did not want to kill Gano Eads, and did not try to kill him. I shot to stop the difficulty. I shot to keep Eads from killing Pat Dunn. I shot to keep Eads from killing me. I did not see him shoot at me." The accused has a right to tes-

tify when he is upon trial for an offense, and it is well settled in this connection that he can testify as to his intent when that question is involved in the offense charged against him; and, whether his testimony in this respect be true or false, the trial court should not decide the fact against him.   In this State the jury are the exclusive judges of the facts proved, the weight to be given their testimony, and the credibility of the witnesses; and in assault to murder, as in homicide, the accused is entitled to have the jury view the facts from his standpoint—that is, as the facts present themselves to him at the time of the difficulty—and to ascertain from these facts the intent with which he acted.   The court is required to charge all the law applicable to every phase of the defense presented by the testimony, however weak it may be, or however false the court may conclude it to be.   It is not the province of the trial court to decide upon the falsity or truthfulness of evidence.   He must frame his charge to meet the testimony of the witnesses, and leave the credibility of the witnesses and the weight to be attached to their testimony for the consideration of the jury.   If the court is permitted to decide upon the truth or falsity of evidence, then he would only be required to charge the jury as to the law applicable to that portion of the testimony which he believed to be true.   This would eliminate all testimony from the case not credited by the court, and the jury would cease to be judges of the facts proved, and the weight of the evidence and the credibility of the witnesses.   It may be possible, or even probable, that the jury would not have believed the defendant's statement of the case as to his intent; yet it was not in the province of the court to decide this question.   That was a matter of fact, relegated exclusively to the jury.   The verdict might have been the same if the requested charge asked by appellant had been given, but this is a speculation.   The court decided this question in advance, and withdrew it from the jury.   If the charge as requested by appellant had been given, submitting the theory of aggravated assault, it might have resulted in a verdict much more favorable to the appellant.   If, as he testified, he "did not want to kill Gano Eads, and did not try to kill him," then, if the jury believed this, he would not have been guilty of a higher offense than aggravated assault.   He swore to these facts.   The court decided they were untrue, and refused his charge.   The intent with which the defendant acted is the crucial test as to whether the offense was assault with intent to murder or aggravated assault.   It was the turning point in this case.   It was the crucial point, and the trial court resolved the question against him.   This he should not have done.   In Texas, under our statutory enactments, I am of opinion that he has no authority to do this.   It occurs to me that it is a direct violation of the statute. See, Moore v. State, 33 Tex. Crim. Rep., 306; Davis v. State, 28 Tex. Crim. App., 542; Mitchell v. State, ante p. 278, and cited authorities. For the reasons indicated, I beg leave to dissent from the opinion of my brethren.   I think because the court refused the special instructions

asked by appellant, this judgment should have been reversed, and remanded for a new trial.

[NOTE.—Defendant's motion for a rehearing, filed after the above opinions were delivered, was overruled without a written opinion.—Reporter.]