## CAMPBELL WILLIAMS v. THE STATE.

### No. 3125. Decided May 6, 1914.

**1.—Murder—Charge of Court—Objections.**

Where the exceptions to the court's charge upon manslaughter were not sufficiently specific to be reviewed on appeal, there was no error. Following Ryan v. State, 64 Texas Crim. Rep., 628, and other cases.

**2.—Same—Self-defense—Charge of Court.**

Where, upon trial of murder, there was no evidence that justified the court in giving the State's requested charge that defendant made an unlawful assault upon the wife of the deceased, the same curtailed defendant's right of self-fense, and is reversible error.

**3.—Same—Evidence—Hearsay.**

Where the court admitted in evidence that defendant's children came to the house of the witness on the night of the homicide; that their parents had left home saying that they were going to kill the deceased, and the record showed that this could not have been res gestae, but was purely hearsay, the children not being introduced as witnesses, the same was reversible error.

Appeal from the District Court of Upshur. Tried below before the Hon. R. W. Simpson.

Appeal from a conviction of murder; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

No brief on file for appellant.

*C. E. Lane,* Assistant Attorney General, for the State.—Cited cases in opinion.

DAVIDSON, JUDGE.—Appellant was convicted of murder, his punishment being assessed at five years confinement in the penitentiary.

The theory of the State was that appellant had, prior to the killing, a quarrel with his sister-in-law, Lillie Dixon, the wife of deceased, Charlie Dixon. That shortly before the killing and on the same day, appellant stated that if Lillie Dixon cursed him again he "would get his gun and go up the road." He did not say where he would go up the road, but the inference is supposed to be that he would go to her house and shoot Lillie Dixon. That is an inference, but not stated as a fact. About sundown appellant and his wife went to a neighbor's house to get some pepper with which to season sausage, they having killed hogs that day. Upon leaving home they sent their two children to a neighbor's house close by. The facts further show that deceased, Charlie Dixon, and his wife, Lillie Dixon, were both killed. The bodies were found in a room in the house. The evidence shows that the deceased fired three shots with his pistol, and appellant fired two with a gun. The evidence seems to be conclusive that deceased was out in the yard between the house and the road along which appellant and his wife were traveling when the shooting occurred; there was blood trailed from that point into the house, and also some shells were found indicating the pistol had there been fired. It is also in evidence that in going after the pepper and returning they had traveled the road that led by the house of deceased; and that as appellant passed by, Dixon fired upon him, and that appellant shot in self-defense. The evidence is that Lillie Dixon was with her husband in the yard at the time the shooting occurred. The two bodies were found in the house not far apart on the floor, and the gun and pistol of deceased were found also in the house close together. There is evidence that appellant may have fired the first shot; that mainly arises from the evidence of the witness who testified to facts indicating, in the judgment of that witness, the gun fired before the pistol fired. The defendant's testimony was positive that deceased fired the first shot. The issues are presented by the facts.

Exception was taken to the court's charge upon manslaughter, but under the decisions of this court it is unnecessary to discuss that inasmuch as the bill of exceptions is not specific enough to bring it within the rule laid down in Ryan v. State, 64 Texas Crim. Rep., 628, 142 S. W. Rep., 878; Berg v. State, 64 Texas Crim. Rep., 612, 142 S. W. Rep., 884, and Byrd v. State, 69 Texas Crim. Rep., 35, 151 S. W. Rep., 1068. We are of opinion, however, that upon another trial the charge on manslaughter should be given free of the objections now urged to it. On account of these decisions, however, the matter is not further discussed.

At the request of the State the following charge was given: "I give you in charge as part of the law of self-defense that if you believe from the evidence beyond a reasonable doubt that the defendant went to the house of deceased and made an unlawful assault upon the wife of deceased, Lillie Dixon, and shot her with intent to kill her, if he did so shoot her and that in so doing he was not justifiable under the law of self-defense given you in charge, then I instruct you that Charlie Dixon, under such circumstances, if he was present and saw such assault was

about to be committed, would have the right to defend her against such
assault, if any, and defendant was thereby on account of such defense
by the said Charlie Dixon put to the necessity of taking the life of de-
ceased, Charlie Dixon, if he did, to save his own life from an assault by
the said Charlie Dixon at the time and place, you are instructed that
his right of self-defense would thereby be cut off, unless you further
find that in the shooting, if he did shoot, or shoot at, Lillie Dixon, and
Charlie Dixon, defendant acted upon adequate cause, as explained to you
in the main charge on manslaughter." This charge, to say the least of
it, is very confusing, but we are of the opinion the charge was error and
upon a phase not made by the testimony. The only eyewitness who
testified to the transaction was appellant's wife. After testifying about
going to a neighbor's house and getting the pepper and starting back
home, she says, "The first thing I noticed as we were passing Charlie
Dixon's house, Charlie got up and come out and told Campbell—said,
'God damn it, didn't I tell you I was going to kill you the next time you
passed this road?' and he commenced shooting at him. Charlie shot first
once or twice. Campbell shot one time, then shot again. He shot once,
then waited a little bit and shot again." Without going into the cross-
examination of the wife, there is her testimony in chief on this particular
phase of the case. There is, therefore, no evidence before the jury as we
understand this record that justified the court in giving the State's
requested charge that appellant made any unlawful assault upon the
wife of deceased as indicated in the requested charge given. This charge
was used to cut off the defendant from his right of self-defense upon the
theory that he shot at the wife of deceased first, therefore he could not
justify in shooting deceased, Charlie Dixon. If appellant shot at the
wife of deceased first and her husband, Charlie Dixon, came, and then
defendant shot at him in defense of his life, of course appellant would
have no right of self-defense. But the facts do not justify such charge
and it was an unwarranted limitation upon appellant's self-defense
theory under the facts. The charge should not have been given.

Bill of exceptions No. 5 was reserved to the ruling of the court ad-
mitting certain testimony, in substance, as follows: While Tave White
was testifying in behalf of the State, and after she had testified that
the defendant's children came to her house the night of the homicide
about seven o'clock, and that nobody came with them to her house, that
there were two of the children, the oldest being about eight or nine
years of age, she was then asked by State's counsel the following ques-
tion: "Now did they say anything about Campbell Williams, or his
wife, or what they were doing, or where they were going, or why they
were there?" Appellant objected on various grounds, that the testimony
was irrelevant, and the answer thereto would be hearsay and not admis-
sible, and was calculated to elicit hearsay testimony, which objection was
by the court overruled and the witness was permitted to answer the
question as follows: "When they came in there they told me that their
papa and mama said—that was before they left home—they said they

was going to kill Mr. Charlie Dixon and Aunt Lillie,—that is what they told me when they came in the house." To which objection was again urged for the reason that the testimony was hearsay, and that the witness was not testifying from her personal knowledge of the fact, but solely from information derived from others, and because the same was irrelevant, hearsay, and highly prejudicial to the rights of the defendant, and was calculated to inflame the minds of the jury and injure the rights of the defendant, and the court overruled these objections. The court in signing the bill thus explains it: "That the witness stated that 'when the children came in they appeared to be badly scared, and excited and the youngest was almost crying.' Therefore the evidence was admitted on the theory that same was a spontaneous outburst from the children, was the act itself speaking through the child, and occurring just before the shooting is re gestae on the question of malice and intent of the defendant, all of which is fully presented in Tave White's testimony in statement of facts." Reference to the statement of facts does not explain anything further than as stated. It is shown by the evidence of the witness that these children went to her house about the time stated and made these statements to the witness White as testified; at least the witness so testifies. The bill of exceptions and statement of facts both show that appellant and his wife were not present and knew nothing of the statements made by the children to White. This testimony was clearly inadmissible under all the authorities. It was hearsay pure and simple. It could not be part of the res gestae. The children were not present at the homicide and knew nothing about it. The entire testimony, including the witness White, excludes the idea that the children were present at the homicide, and clearly shows they were, at the time of the homicide, at the house of the witness White. It was not legitimate testimony, and was of the most damaging character. These children were not used as witnesses.

For the reasons indicated the judgment is reversed and the cause remanded.

*Reversed and remanded.*