## CADER BARFIELD V. THE STATE.

No. 12663.   Delivered January 27, 1929.
Rehearing denied State November 27, 1929.

The opinion states the case.

*Carney & Carney* of Atlanta, and *O. W. Blocker* of New Boston, for appellant.

*A. A. Dawson* of Canton, State's Attorney, for the State.

LATTIMORE, JUDGE.—The offense is murder; the punishment confinement in the penitentiary for twenty-five years.

The state's testimony was in substance as follows:   Deceased, Ray Palmer, and appellant were together in an apartment in Texarkana.   Both had been drinking.   Deceased accused appellant of informing certain parties that he, deceased, had burglarized a store. He called appellant a "snitching" s— of a b—.   Appellant slapped deceased.   They fought for a few minutes neither being hurt.   A second fight ensued in which deceased whipped appellant.   Appel-

lant left the apartment saying that he was going to get a gun and kill deceased. Deceased lay down on a cot in a bed room. In a few minutes appellant returned with a pistol in his hand. He rushed into the bed room with the statement that he was going to kill the s— of a b—. Upon entering the room where deceased was lying on the cot appellant fired three shots in rapid succession. One shot struck deceased, resulting in his death some two or three months later.

Appellant testified that deceased told him that he, deceased, was implicated in the burglary referred to; that prior to the homicide, deceased came to his (appellant's) house and told him that he (appellant) had told of the affair in spite of the fact that he had promised deceased not to say anything about it; that he denied that he had told and deceased said that if he found out that he had it would not be good for him; that knowing deceased's character and the fact that he had threatened him (appellant) he avoided deceased. His further version of the transaction resulting in the homicide was as follows: He went to the apartment where he met deceased for the purpose of meeting his wife and sister not knowing that deceased was there. Upon meeting deceased an altercation occurred, deceased calling him a "snitching" s— of a b—. He slapped deceased. They fought with their fists until separated by those present. Neither had been hurt. Deceased jumped on him again, striking him with brass knucks. Deceased struck him several times with the knucks, knocked him down and according to his statement "stomped me in the right side." He was unable to get up immediately. As soon as he could get up he left the house in order to get out of the way. He went to his brother's house to get him to go back with him to get his wife and sister. His brother was not at home. Being afraid to go back without protection he took his brother's gun with him and returned to the apartment. He went into the room, where deceased was lying on the cot, in an effort to find his folks. Deceased jumped up, cursed him and started toward him. He, appellant, fired one shot toward the top of the house, one toward the wall and another in the floor in front of deceased. He did this in order to stop deceased, having no intention of shooting deceased. Appellant was in a dazed condition when he shot deceased, the severe beating with knucks having caused him great pain. Appellant had drunk only one bottle of beer before the homicide and was not intoxicated.

Witnesses for appellant testified to having seen deceased carry knucks. They also testified that deceased bore the reputation of

being a violent and dangerous man. The court submitted a charge covering murder and self-defense. The jury were instructed that if they believed fróm all of the facts and circumstances in evidence that appellant was not actuated by malice aforethought the punishment assessed should not exceed five years.

Appellant's first application for a continuance was predicated on the absence of two witnesses who were under process, there being no question as to diligence. As to one of the witnesses, the allegations were:

"By the witness, Jimmie Christy, he expects to prove that said witness was with the defendant just prior to the alleged commission of the offense charged in the indictment, and if present would testify that when he left the defendant at the house of deceased's mother, the defendant was not drunk, and that in a few minutes he again saw the defendant at a time just before the alleged shooting and that defendant was bloody and bruised and appeared to be suffering and in a dazed condition and did not appear to know what he was doing."

The facts expected to be proved by the other absent witness were stated as follows:

"That by the witness Whit Christy the defendant expected to show that just before the alleged shooting, that he was with the defendant and that defendant was not drunk. That he saw the defendant immediately after the alleged shooting and that the defendant's face was bruised and bleeding and his head was skinned and that there were other bruises on the defendant's body. That the defendant appeared to be in a dazed condition."

Appended to the motion for a new trial were the affidavits of the witnesses showing that they would testify to substantially the facts alleged in the application for a continuance.

Viewing the testimony to be elicited from the absent witnesses in the light of the entire record, we are of the opinion that the learned trial judge erred in refusing a new trial. The absent testimony was competent and material. It was appellant's theory that he had been assaulted with knucks; that deceased had knocked him down and kicked him; that he left the scene of the fight in fear and pain; that he returned with no intention of killing deceased; that he carried a pistol because he was afraid of deceased and wanted protection in returning for his family; that he was suffering and in a dazed condition when the fatal shot was fired; that he was not actuated by malice. This theory was given support by the testimony

of appellant, his wife and sister. Witnesses for the state testified that deceased whipped appellant, but declared that he did not use knucks. They said that he used his fists and that it was true that appellant's face was bruised. The state's witnesses denied that deceased knocked appellant down and "stomped" him. In short, the state attempted to minimize the injuries appellant claimed he received and denied that appellant had been attacked with knucks. The state contended that the blood on appellant was caused by a small knife in his own hands. In the cross-examination of appellant a strenuous effort was made to show that he was not in a dazed condition when he shot deceased, the position of the state being that he deliberately returned to the scene of the difficulty and with malice aforethought shot deceased. To support his theory appellant had to rely chiefly upon the testimony of himself, his wife, mother and sister. If the state's theory be true it would indicate that the killing was upon malice aforethought. If appellant's theory be accepted the jury may have found he was in a condition of mind aroused by the severe attack made upon him that would have excluded the idea of a killing upon malice aforethought, and, therefore, would have precluded the assessment of a greater penalty than five years. If the statute defining manslaughter had been in operation, a charge submitting such issue was called for by the evidence. The absent testimony tends to support appellant's theory that the killing was not upon malice aforethought. The application being appellant's first, proper diligence having been exercised to secure the attendance of the witnesses, and said testimony being competent and material, we are of the opinion that in view of the record it was reasonably probable that if the absent testimony had been before the jury a verdict more favorable to appellant would have resulted. This being the case, it becomes our duty to order a reversal. Dyer v. State, 83 S. W. 192; Pearson v. State, 120 S. W. 1004; Mansell v. State, 182 S. W. 1137; White et al. v. State, 236 S. W. 745; Turman v. State, 274 S. W. 593; Battle v. State, 279 S. W. 842; Tubb v. State, 5 S. W. (2d) 150; Burns v. State, 8 S. W. (2d) 157.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—The State insists, for various reasons, that we erred in our reversal of this case. Each of the grounds assigned has been carefully examined by us and in no one of them do we think the contention made should be sustained. We see no good reason for writing at any length.

The motion for rehearing by the State will be overruled.

*Overruled.*