PETER HAMMOND V. THE STATE.

*No. 2907.　Decided March 8.*

1. **Practice—New Trial.**—Although the application for continuance discloses a failure of diligence to secure the absent witnesses at the trial, yet if on the trial the absent testimony, construed in the light of the evidence adduced, appears material and probably true, the defendant, if convicted, should be awarded a new trial.

2. **Same—Practice in the Court of Appeals.**—This court will not revise the action of the trial court in refusing a new trial because of its previous refusal of a continuance, unless it be made to appear not merely that the accused might probably have been prejudiced by such ruling, but that it is reasonably probable that, had the absent testimony been before the jury, a verdict more faverable to the defendant would have resulted. See the opinion for a state of case in which, under the above rules, a new trial should have been awarded.

APPEAL from the District Court of Webb. Tried below before Hon. J. C. Russell.

This conviction was in the first degree for the murder of J. N. Muldooney, and the penalty assessed was a life term in the penitentiary.

The opinion sufficiently states the case.

*Atlee & Earnest,* for appellant.

*W. L. Davidson,* Assistant Attorney-General, for the State.

WHITE, PRESIDING JUDGE.—A contest was had over the diligence used by defendant to secure the attendance of the absent witnesses named in his application for continuance, and the application was overruled because the diligence was insufficient. This ruling was doubtless correct. But the fact that a continuance was refused in the first instance because of a want of diligence does not absolve the trial court, on the motion for a new trial, from the duty of considering the materiality and probable truth of the testimony expected from the absent witnesses in connection with the evidence adduced on the trial. Though an application for continuance fails to comply with the statutory requirements, if in view of the evidence adduced on the trial the absent testimony appears to be material and probably true, the trial court should award a new trial. Willson's Crim. Stats., sec. 2186; Simmons v. The State, 26 Texas Ct. App., 514; Black v. The State, 27 Texas Ct. App., 495.

"It is not in every case, however, even where the absent testimony is material and probably true, that this court will revise the ruling of the trial judge in refusing a new trial, considered with reference to the application for a continuance. It is only in a case where, from the evidence adduced on the trial, we would be impressed with the conviction not merely that the defendant might probably have been prejudiced in his right by such ruling, but that it was reasonably probable that if the ab-

sent testimony had been before the jury a verdict more favorable to the defendant would have resulted." Browning v. The State, 26 Texas Ct. App., 432; Boyett v. The State, Id., 689; Peace v. The State, 27 Texas Ct. App., 83; Covey v. The State, 23 Texas Ct. App., 388; Self v. The State, just decided, *ante*, 398.

Now, to apply these rules to the case in hand. Defendant was found guilty of murder of the first degree, with the penalty assessed at imprisonment for life in the penitentiary. Two theories were presented by the evidence. For the State the theory was that appellant killed the deceased because the deceased had stated to his, defendant's, employer that he, defendant, was a desperate character, who had been driven out of Wharton County by the sheriff of said county on account of his character and misdoings in said county; that this statement of the deceased caused defendant's discharge by his employer; that deceased was employed in his stead; that defendant threatened just before the killing to kill deceased on account of it, and that this and this alone was the cause of the killing.

This theory was supported by the dying declaration of deceased to the effect that "Peter Hammond shot me because I had told O'Brien how the sheriff of Wharton County took him in;" by the statements of defendant to Jenks made on the morning of and a short time before the killing, and by defendant's remark to deceased just as he was about to shoot—"Stand, Muldooney! What have you been saying to O'Brien about me?"—and his threats to the same effect made just before to the witness Lane. Evidently the verdict and judgment are based upon the correctness and truth of this theory of the State.

On the other hand, the theory and contention of the defendant was that he killed deceased on account of insulting and slanderous language used by deceased concerning his, the defendant's, sister; and that in this view of the case his crime, at most, would be of no higher grade than manslaughter. As shown by the testimony adduced on the trial, it is made to appear in relation to this matter, that a day or two before the killing deceased told one Payne, a witness, that defendant's sister had been "laying up with a man in Wharton County;" that he told the witness Barnhard that defendant's sister "was a prostitute, and that he knew her to be such; that she had been a prostitute in Hempstead, and was in a house of prostitution of the lowest order in Dallas." But neither Payne nor Barnhard had communicated to defendant these statements of deceased about his sister.

The witness Jenks says that about daylight on the morning of the killing he had a conversation with defendant, and that defendant then said to him: "Muldooney has been back-capping me to O'Brien. Muldooney has told O'Brien that I am a desperate man, and to look out for me; and furthermore, he has been slandering my sister. He seemed to be affected when he referred to his sister. He almost cried."

Defendant himself testified that as he started to breakfast he was called by Dave Ray and Jack Dempsey, "and Dave Ray told me that Muldooney had told him that I had a sister who was a prostitute, and that she was in Dallas in a house of prostitution of the lowest character. Dempsey said that it was true that Muldooney had said this, as he had heard it." Just after eating his breakfast defendant met Muldooney, and, he says, "I became so enraged at what I had heard, at what Ray had told me, that I could not help but do what was done. * * * I killed Muldooney because of what Dave Ray and Dempsey told me he had said about my sister."

Defendant's application for continuance was on account of the absence of his witnesses Ray and Dempsey, by whom he expected to prove these facts. That said testimony was material on the issue of manslaughter, based upon insulting words and conduct concerning a female relative, which, under our code (article 597) is one of the enumerated adequate causes which will reduce a homicide from murder to manslaughter, is, we think, manifest. Was the proposed testimony probably true, and such as would likely affect the result upon another trial of the case? In view of what the deceased had told the witnesses Barnard and Payne about defendant's sister, it is most highly probable, we think, that he should have told Ray the same thing, and that Ray's and Dempsey's testimony to the effect that Ray communicated the matter to defendant just a short time before the shooting, was true. That defendant had been informed of deceased's slanderous statements is furthermore borne out by defendant's statements to Jenks as aforesaid. The evidence upon this point, as it stood before the jury on the trial, amounted simply to defendant's unsupported declaration that he killed the deceased because he had slandered his sister. He could not have acted upon what Barnard and Payne had heard, for they had not communicated it to him. He does not tell Jenks from whom he received his information, but he states in his own testimony that he obtained it from Ray and Dempsey. Now, if Ray's and Dempsey's evidence could have been had in addition to this other testimony, is it not altogether probable that it would add strength to this defense, and upon another trial tend to change the result from murder of the first degree to manslaughter? Under the circumstances developed we think it probable that such result might be effected. There was no effort made by the State to prove the general character of defendant's sister in order to ascertain the extent of the provocation. Penal Code, art. 599. In the absence of proof that her general character for chastity was bad, the reasonable presumption which attaches to all females would be that it was good, and that language derogatory to it was insulting, slanderous, and defamatory, and such as would produce in the mind of the brother of a virtuous sister a degree of anger, rage, and resentment calculated to render his mind incapable of cool reflection.

We are of opinion the court erred in overruling defendant's motion for a new trial based upon the absence of this testimony. The other questions presented on the record and discussed in the brief of counsel will not be passed upon, as they are of a character not likely to arise on another trial of the case.

Because the court erred in refusing the defendant a new trial, the judgment is reversed and cause remanded.

*Reversed and remanded.*

Hurt, J., absent.