## MORMAN PRUITT V. THE STATE.

*No. 7115.    Decided June 26.*

1. **Continuance—New Trial.**—To constitute the refusal of an application for a continuance because of absent testimony, and the refusal of a new trial because of such ruling, reversible error on appeal, it must appear that the absent testimony was material and probably true, and it must also reasonably appear that if the absent testimony had been before the jury a verdict more favorable to the defendant would have resulted. And if substantially the same testimony was before the jury as that which was absent, the refusal of the application for continuance will not be revised.

2. **Bill of Exception.**—A bill of exception to the ruling of the trial court admitting evidence over defendant's objection must state the objection made to the evidence, or the ruling will not be considered on appeal.

3. **Verdict.**—To ascertain the punishment to be assessed, the jury agreed that each juror should state the number of years he was in favor of assessing, and the several numbers thus stated should be added together and the aggregate sum should be divided by twelve and that the quotient should be the term assessed by the verdict. This was done, and the quotient was five years and seven months. This result was not agreed to by the jury, and after some discussion the jury fixed the punishment at five years confinement in the penitentiary and so returned their verdict. *Held*, that the verdict was not vitiated.

APPEAL from the District Court of Lamar.   Tried below before Hon. E. D. McClellan.

The case is sufficiently stated in the opinion.

No brief for appellant.

*R. H. Harrison*, Assistant Attorney-General, for the State.

DAVIDSON, JUDGE.—Appellant applied for a continuance for the testimony of the alleged absent witnesses by whom he expected to prove that Riley, the owner of the alleged stolen money, was drinking heavily on the evening preceding the night the theft of the money was committed, and during said night until a late hour; and that he (defendant) had on that evening about $160 in currency.

By Biggs, one of the absent witnesses, he expected to prove that he did not pay to him (Biggs) on Monday morning the sum of $20 with a twenty-dollar bill, the theft having been committed during Sunday night previous thereto. Shanklin for the State testified on the trial that defendant admitted to him that he had paid Biggs early Monday morning a twenty-dollar gold certificate bill.

The State proved that Riley had about $3000 in paper money, and that he carried it in a pocket which he had made on the inside of the lining of the coat he was wearing on the occasion of the theft. The pocket was under the arm on the right side of the coat and was sewed up. Riley for the first time visited the city of Paris, Lamar County, on Sunday, the 26th day of May, 1890. He in his peregrinations about that city finally found himself in a saloon, where he, defendant, and others drank a considerable amount of intoxicating beverages for some hours, until after 12 o'clock at night. He was drinking heavily and defendant lightly. Riley "set up the drinks" every time. Defendant would sometimes drink and sometimes take a cigar. Finally Riley left the saloon in company with one Smith and the defendant. Smith was on Riley's left and defendant on his right and holding him by the right arm. Smith desired Riley to go with him to the Biggs house, but defendant told Riley privately that Smith would not do to rely on and that the Biggs House was not a good one. Defendant finally got the confidence of Riley and took him to the Peterson Hotel, where they drank more. Defendant took Riley up stairs into the hotel and suggested a room, and registered, as Riley supposed, their names. When they went into the room, having no baggage and being unknown to the clerk of the hotel, he demanded pay in advance and offered them separate rooms at 75 cents per room, but defendant said they would occupy the same room. They were informed that this would cost them $1. Defendant then informed Riley that he would have to pay for the room, as he (defendant) had no money. The money was paid by Riley, and defendant registered their names and they went off to bed. Riley's name was written plainly, but defendant's name was not legible, and so written that no name could be made out of it. The next morning defendant went to the register and was about it a few minutes, and after that time his name was plainly written on the register. During the night the clerk, seeing their light burning in their room so long after their retirement, becoming uneasy or excited, placed himself where he could look through the window into the room, and there saw Riley lying across the bed fast asleep, with his coat and vest off. The defendant was standing by a table and had a large roll of money in his hand. It was paper currency, and he seemed to be counting it. About an hour after this a fire was discovered in this room. Upon entering the room Riley was found lying on the floor in a state of stupor, and his coat and vest were in the middle of the floor on fire and

burning. The fire was extinguished. The defendant then threw the coat and vest out of the window, remarking as he did so that they were "no good now." The coat and vest were brought back, and the coat was found burned on the right side where Riley kept his money. Riley testified that as he and defendant were going along to the hotel "defendant kept nudging me in the right side about where my money was." Several witnesses for the defense testified that they saw the defendant before the theft of Riley's money with about $150 or $160.

The testimony of the absent witnesses may be true under the facts above detailed, and yet the defendant be guilty. Defendant may have had the money he claimed he had, and still that would not militate against the State's testimony nor affect the case. He may not have paid Biggs the money he admitted to Shanklin he did pay him, but that would not prove that he did not make the admission. If the State's testimony is true, then the absent evidence could not affect the case. If the State's evidence is untrue, the case must fall for want of supporting facts.

"If there is such a conflict between the inculpatory facts and those set forth in the application as to render it improbable that the facts stated in the application are material and probably true, the continuance should be refused, and hence a new trial based thereupon should also be refused. But even "if material and probably true, the case should not be continued unless the facts are exculpatory or tend to discredit or explain the inculpatory facts." McAdams v. The State, 24 Texas Ct. App., 101.

"The rule is well settled that testimony which if procured would not tend to disprove the guilt of the accused is of too immaterial a nature to entitle him to a new trial based upon an application for a continuance to obtain it." Browning v. The State, 26 Texas Ct. App., 443.

"It is not in every case, however, even where the absent testimony is material and probably true, that this court will revise the trial judge in refusing a new trial considered with reference to the application for a continuance. It is only in a case where, from the evidence adduced upon the trial, we would be impressed with the conviction not merely that the defendant might probably have been prejudiced in his rights by such ruling, but that it was reasonably probable that if the absent testimony had been before the jury a verdict more favorable to the defendant would have resulted." Browning v. The State, 26 Texas Ct. App., 443; Covey v. The State, 23 Texas Ct. App., 388; Massie v. The State, *ante*, p. 64.

The inculpatory facts adduced make it apparent that the absent testimony is not material, for if the same be true the verdict could not have been affected thereby if the State's case was true. At least it is not at all likely nor probable that said evidence would have affected the jury in arriving at their verdict in the case.

Again, the facts expected to be proved by the absent witnesses were but cumulative of evidence adduced by the defendant during the trial. It has been held by this court in several cases, that if the same or substantially the same testimony was before the jury as that which is absent the accused can not complain. This rule is applicable to this case. Walker v. The State, 13 Texas Ct. App., 643; Tucker v. The State, 23 Texas Ct. App., 512; McAdams v. The State, 24 Texas Ct. App., 86; Allison v. The State, 14 Texas Ct. App., 402; Beatey v. The State, 16 Texas Ct. App., 421.

The motion for continuance was properly overruled.

On the day subsequent to the theft of the money from Riley the defendant was approached by Shanklin, who accused him of the theft and sought to induce him to return the money, and at the same time informed him that he had ascertained that he (defendant) had paid one bill of the money to Biggs and another to a Mrs. Fred. Defendant objected to this testimony, but failed to state any ground or reason therefor. We are not therefore called upon or authorized to consider and revise the ruling of the court in this matter. "Inasmuch as the judge can not discuss or comment upon the proposed evidence, but must simply decide upon the objections made to it, it seems fair to infer that all objections intended to be relied on must be clearly stated, so that he may act in reference to all, and that a failure to assert any objection would be tantamount to a waiver of all objections not affirmatively presented." Mayo v. The State, 7 Texas Ct. App., 342; Davis v. The State, 14 Texas Ct. App., 655; King v. The State, 13 Texas Ct. App., 277; Logan v. The State, 17 Texas Ct. App., 50; Bryant v. The State, 18 Texas Ct. App., 107.

Appellant filed a second motion for new trial, and appended thereto the affidavit of one of the jurors who tried the cause. The affidavit states substantially that the jury agreed to and did arrive at their verdict by each juror setting down his individual verdict, adding these amounts together, dividing the aggregate thus reached by twelve, and adopting the quotient as the verdict of the jury. It also states that the jurors agreed to be bound by the result. That result was stated in the affidavit to be five years. This motion was controverted. The evidence adduced shows conclusively and without contradiction that the jury added the verdict of each juror to the verdict of all the others, divided the sum total by twelve, and obtained a verdict of five years and seven months. This was not agreed to, but created some dissatisfaction and discussion. Finally it was agreed that the seven months should be deducted and thus leave five years as the verdict. Proving satisfactory to the entire jury, this verdict was returned into court. This does not come within the prohibition of the statute and was not a verdict decided by lot. The agreement entered into to be bound by

the result was broken and the original result was not adopted by the jury, but on the contrary was disregarded and set at naught. No one was bound by the result of the addition and division, but a milder punishment was finally agreed upon and substituted therefor. The impropriety in such cases is said to consist in the agreement to be bound by the result attained by the terms of the agreement. The impropriety in such cases has never been held to consist of the breach of the agreement and a failure to be bound by it. The motion for new trial was properly overruled.

The evidence amply supports the verdict. No reversible error appearing of record, the judgment is in all things affirmed.

*Affirmed.*

Judges all present.

HURT, J., dissents.