HUGH WILEY V. THE STATE.

No. 13831.   Delivered January 28, 1931.
Rehearing Denied March 18, 1931.

450

The opinion states the case.

*Carney & Carney,* of Atlanta, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is murder; the punishment, confinement in the penitentiary for four years.

Appellant, Rube Huff, and Drew Wiley, appellant's son, had engaged in a dice game. Appellant and Rube Huff had a dispute, which resulted in Huff knocking appellant down. According to the State's testimony, appellant arose with a knife in his hand. The parties were separated, and appellant left the gathering. It appears from appellant's testimony that a few minutes later some unknown person shot appellant in the face with a shotgun, injuring him to some extent. It was not shown that deceased, Rube Huff, had anything to do with the shooting. Sometime thereafter, according to the testimony of the State, several of the parties present went to appellant for the purpose of bringing about a peaceable settlement of the differences between appellant and deceased. From this point the State's testimony was in substance as follows: Approaching appellant, they found him armed with a rifle. His son was present with a double barrel shotgun and his daughter had a single barrel shotgun. The parties were not far from the place where the first difficulty had occurred. After some talk, appellant suggested that they call deceased, as he was willing to adjust the matter with him in a peaceable manner. Deceased being called, approached the gathering, saying: "Boys, put up your guns. Let's settle it without guns. Peace is what I want." Appellant said: "There is the s- of a b-. Shoot him." Appellant's son, Drew Wiley, fired one shot. Deceased's hands were in a pleading position when he was shot. It appears that deceased was armed.

Appellant testified, in substance, that someone had shot him in the face shortly before the difficulty with deceased; that at the time deceased was shot he (deceased) had drawn a pistol on Drew Wiley, appellant's son, and said: "I have got you now, you s- of a b—"; that Drew Wiley shot deceased twice after he had made the demonstration mentioned.

It will be seen from the foregoing statement of the testimony that it was the State's theory that appellant induced those who were attempting to re-establish friendly relations between him and deceased to bring deceased to the place of the homicide for the purpose of enabling appellant and his son to kill him. As showing malice, the State relied upon the antecedent difficulty deceased and appellant had had, in which deceased had knocked appellant to the ground. On the contrary, it was appellant's theory that deceased attempted to shoot Drew Wiley as he approached the gathering, and that Drew Wiley fired the fatal shot to save his own life. There being an issue as to who began the difficulty, appellant offered the testimony of his son and daughter to the effect that deceased's brother went to appellant's home, in appellant's absence, immediately after the first difficulty and stated to the witnesses, in substance, that he had wrestled with deceased until he was worn out; that he could

not hold him any longer; that there was no telling what deceased would do; that appellant and his family should be on the lookout for deceased.

Appellant alleged in his first application for a continuance that his wife, if present, would testify, in substance, that she heard the firing of the guns at the time it was alleged that deceased was shot; that shortly before the guns fired deceased's brother had come to her house and told her to be on the lookout for the deceased; that he had stated further to her that he had wrestled with deceased until he was worn out and could hold him no longer; that if deceased came to her house there was no telling what he would do; that deceased had already knocked her husband in the head and that they had laid him out "back there". It was further averred in the application that the absent witness would testify that after her husband had had the first difficulty with deceased he had come home wounded and bleeding. Appellant, in part, predicated his motion for a new trial on the action of the court in overruling his application for a continuance, and attached the affidavit of the absent witness wherein it was shown that she would have testified to substantially the facts alleged in the application. Touching diligence, it was alleged that appellant's wife was too ill to appear and testify. It appears that she was brought, under attachment, to a hotel near the court house. One of the doctors who examined the witness testified that in his opinion she was able to testify, but declared that she was ill. He was further of the opinion that while her life would not be endangered if she testified, yet that it might aggravate her trouble. In view of the conclusion we have reached, we deem it unnecessary to determine whether appellant was lacking in diligence.

It is not clear that the testimony of the absent witness touching what was said to her by the brother of deceased was admissible in its entirety. The expression by him of the opinion that she should be on the lookout for deceased as there was no telling what he would do would not appear to be admissible. Mercer v. State, 111 Texas Crim. Rep., 657, 13 S. W. (2nd) 689. The fact that the brother of deceased had wrestled with deceased after the first difficulty might be admissible if the brother had been called to testify as to the matter, as tending to show who began the difficulty at the time deceased was killed. It would seem that coming from the absent witness as testimony touching an uncommunicated threat it would be hearsay. The testimony of the absent witness to the effect that her husband came to her home after the first difficulty in a wounded and bleeding condition was relevant and material. In any event, if all of the absent testimony should be held to be relevant and material, it does not necessarily follow that a new trial should have been granted. It is true that the trial judge's discretion to determine the probable truth of the testimony of the absent witness did not operate in view of the fact that her affidavit, in which it was shown that she would testify to the

facts averred in the application for continuance, was attached to the motion for new trial. White v. State, 90 Texas Crim. Rep., 584, 236 S. W., 745; Cruz v. State, 100 Texas Crim. Rep., 188, 272 S. W., 486; Tubb v. State, 109 Texas Crim. Rep., 458, 5 S. W. (2d) 150. As said in White v. State, supra, this should not be understood to necessitate a new trial unless the materiality of the absent testimony be such as that, if true, it would likely produce a different result upon another trial. Moreover, it was said in the same connection that it would not necessarily result in the granting of a new trial when there was other evidence cumulative of the absent testimony present or available to the appellant so that it reasonably appeared that no injury resulted in the absence of such testimony. In the recent case of Walton v. State, 116 Texas Crim. Rep., 20, 34 S. W. (2d) 598, delivered January 14, 1931, the rule laid down in White's case was reiterated. Conceding the truth of the absent testimony, the question is, whether, viewed in the light of the facts adduced upon the trial, it is of such materiality, if admissible, as that it would likely produce a different result upon another trial. Appellant's son and daughter testified to the same facts set forth in the affidavit of the absent witness. Having the same testimony before them, the jury concluded that deceased did not begin the difficulty which resulted in his death. Notwithstanding the jury may have concluded that the brother of deceased may have wrestled with him until he was worn out, and that it was his opinion that deceased was bent on mischief, the jury may have concluded that the matter was of little materiality in view of testimony touching the immediate transaction in which deceased lost his life. The learned trial judge concluded, after hearing all of the testimony and taking into account the fact that the absent testimony was cumulative, that its production upon another trial would not likely produce a different result. We are unable to reach the conclusion that an abuse of discretion is shown.

Appellant made a motion to quash the special venire on the ground that some of the jurors shown on the list had been drawn one time before at the same term of court to "answer summons to a special venire", and further, that the same jurors had been drawn into service as regular jurors. The court heard testimony on the motion which was, in substance, as follows: In drawing the special venire the clerk left out of the box members of the regular jury list who had been theretofore drawn on two special venires, and placed in the box those names which had only been drawn on one special venire. The juror Rhodes was inadvertently drawn on the present venire after his name had already been drawn on two other special venires. It was not shown that he had been summoned, or that he appeared, in either case. Only one of the cases in which the name of the juror Rhodes appeared as special venireman had been tried. The other case was continued on the same day the present

case was called for trial, and the venireman discharged. Five men whose names appeared on the special venire list in the case at bar had at the same term of court served in the trial of a murder case, having been drawn on the special venire in that case. They were the only jurors appearing on the list who had served on any special venire. It was not shown that they had served for one week as regular jurors during that term of court.

Article 593, C. C. P., provides, in substance, that no citizen who has served as a petit juror for one week during any term of court shall, during said term, be compelled to answer summons to more than one special venire. It is further provided in said article that no citizen shall be compelled to answer summons to a special venire more than twice during any one term of court. The provisions of the article referred to do not relate to counties under the "Jury Wheel Law". The county in which the case at bar was tried was not under the "Jury Wheel Law". In Moore v. State, 49 Texas Crim. Rep., 629, 95 S. W., 514, it was held that jurors within the exemption mentioned in the statute might serve unless they claimed their exemption, as the statute did not disqualify them. In Harris v. State, 91 Texas Crim. Rep., 446, 241 S. W., 175, on motion for rehearing, in considering a similar question, Judge Lattimore used language as follows:

"We further observe that it is not made to appear that the 29 jurors whose names appeared on both the Cornwall venire and that in the instant case had in fact been drawn, summoned, or served for any week of the term of court. As we understand the law, and its interpretation in Moore v. State, supra, even if the jurors themselves desired to take advantage of the exemption from jury service described in the Act of the 29th Legislature, supra, they would have to satisfy the court that they had been summoned twice before being summoned in the matter then before the court. In other words, in order to obtain relief from jury service for a given week, a juror might show that he had served on two special venires; or, if seeking relief from special venire service, he might show that he served one week as a regular juror and on one special venire, but unless some such facts were made to appear, he could not claim such exemption. Based on the opinion in the Moore Case, supra, there might be grave doubt as to the right of the accused to complain if he could show no more than that by a mistake of the clerk names had been put on his venire list of men who had the right to claim their exemption, unless it was further made to appear that such men did in fact claim such exemption. If they were present and willing to serve, it would be doubtful whether appellant would have any complaint at all."

The action of the trial court, in overruling the motion to quash, was sustained in Harris v. State, supra, on the ground that the bills of exception relating to the matter failed to show any right on the part of the

jurors to claim the exemption, or any default in the attendance of qualified jurors in numbers corresponding to the venire ordered and drawn. In the present case the bill of exception fails to show that the juror Rhodes was summoned to appear as a juror on the other special venires. It is merely shown that his name had been drawn and appeared on the lists. In other words the bill of exception fails to show that the juror was compelled to answer summons to a special venire more than twice during that term of court. Further, the bill fails to show that any venireman who had served on one special venire had served for one week as a regular juror during that term of court. Disclaiming any intention of holding that the objection would have been available to appellant had the bill been sufficient to present it, the opinion is expressed that error is not presented.

In charging on self-defense the court failed to take account of the words used by deceased. Appellant testified that deceased drew a gun on Drew Wiley and said: "I have got you, you G- d- s- of a b-". We quote appellant's objection to the charge as follows:

"Defendant further objects and excepts to paragraph 10 of the said court's charge on self defense because the same is too restrictive of the rights of the defendant in that the court limits the jury's consideration of the question of the self defense to an attack made or about to be made by Rube Huff upon Drew Wiley."

We deem the exception insufficient. Article 658, C. C. P., provides that the appellant or his counsel shall present his objections to the court's charge in writing, distinctly specifying each ground of objection. There seems to be nothing in. appellant's objection that would have apprised the trial court that appellant was complaining because of the fact that the jury's consideration of what might give rise to the right of self-defense was limited by the language of the court to the acts and conduct of deceased. While no form of objection is prescribed, under the statute, a general objection is not ordinarily sufficient to bring in review the action of the trial court in refusing to amend the charge. Unless the objection is sufficiently definite to make reasonably apparent to the trial judge, the fault complained of, when the charge complained of and the objection are considered together, the failure to amend the charge is not subject to review. Gill v. State, 84 Texas Crim. Rep., 531, 208 S. W., 926.

Failing to find reversible error, the judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—Without critically analyzing and discussing the application for continuance made by appellant, we think the trial court well within his discretion in overruling same. We are in accord with the things said in the original opinion as to the lack of materiality of most of the testimony of appellant's wife, the absent witness. Tom Huff, a brother of deceased, who appears to have acted throughout in the role of a peace-maker, after separating his brother and appellant, and after appellant left the party in the night time apparently going toward his home some half mile distant, got in his car and went to appellant's home for the purpose of seeing him and talking the matter over. What he said to Mrs. Wiley, as set out in the application for continuance, appears in line with his efforts to prevent further difficulty. There appears nothing suggesting an acting together of Tom Huff with his brother at the time of the shooting. While the expected testimony of Mrs. Wiley as to the fact that her husband's head was bloody when he came home, would be competent, yet inasmuch as there is practically no dispute as to the condition of his head, we are unable to see the materiality of this testimony in so far as it might tend to bring about a different result upon another trial. Further, in regard to said application for continuance, we observe that when the application was presented setting out the illness of appellant's wife, the trial court sent two doctors out to her house with instructions to examine her and report. Upon their return and the making of their verbal report, the court issued an attachment for said witness, sent the sheriff out with same, had her brought to the county seat and taken to a hotel, and—being again advised by the doctors that she was able to attend court and testify—overruled the application for continuance.

The main contention in this motion appears to be that said wife having made affidavit that she would testify as set up in the application for continuance, and appellant having attached said affidavit to his motion for new trial, the trial court should have granted the motion, and that we erred in not so holding.

It is urged that under the terms of subdivision 6 of Art. 543, C. C. P., as construed by the decisions of this court, the question of the probable truth of the testimony of the absent witness was put beyond the pale of adverse decision by the trial court by the affidavit of the absent witness attached to the motion for new trial. Many authorities are cited in Mathason v. State, 89 Texas Crim. Rep., 136, 229 S. W., 548, and White v. State, 90 Texas Crim. Rep., 584, 236 S. W., 745, which seem to support this conclusion. It is also insisted that if the absent testimony, viewed in the light of that before the court below upon the trial, be material, then in obedience to the language of said subdivision 6 a new trial should have been granted.

We must not lose sight of other parts of said statute, nor overlook what has been so often said heretofore by this court upon this subject. While it is said in said subdivision 6: "If an application for continuance be overruled, and the defendant convicted, if it appear upon the trial that the evidence of the witness or witnesses named in the application was of a material character, and that the facts set forth in said application were probably true, a new trial should be granted," it is also said elsewhere in the same subdivision: "The truth of the first, or any subsequent application, as well as the merit of the ground set forth therein and its sufficiency shall be addressed to the sound discretion of the court called to pass upon the same, and shall not be granted as a matter of right." In Browning v. State, 26 Texas App., 432, 9 S. W., 770, 771, after quoting what is first above quoted from said subdivision of the statute, this court proceeds ao analyze the absent testimony, and admitting its competence, we observed:    ·

"If Mary Browning should disprove Crisp's testimony as to the matter, would that fact disprove the other inculpatory facts which are uncontradicted and which point with unerring certainty to the defendant's guilt? We think not.

"The rule is well settled that testimony which, if procured, would not tend to disprove the guilt of the accused is of too immaterial a nature to entitle him to a new trial based upon an application for a continuance to obtain it."

And our conclusion is announced as follows:

"It is not in every case, however (even), where the absent testimony is material and probably true that this court will revise the ruling of the trial judge (in refusing a new trial considered with reference to the application for a continuance). It is only in a case where, from the evidence adduced upon the trial, we would be impressed with the conviction not merely that the defendant might probably have been prejudiced in his right by such ruling, but that it was reasonably probable that, if the absent testimony had been before the jury, a verdict more favorable to the defendant would have resulted. Covey v. The State, 23 Texas App., 388, 5 S. W., 283; Willison v. The State, 7 Texas App., 400.

In Boyett v. State, 26 Texas App., 704, 9 S. W., 275, 276, in his usual terse and forceful way, Judge Hurt says:

"Let us concede for the argument that the diligence used to procure the attendance of these witnesses was perfect, the question remains; was there error in overruling the application, and was there error in refusing a new trial because of this matter? We have no hesitation in saying there was none, because the facts, if true, and if adduced on the trial, would not have affected the result of the trial in the slightest manner; and, while *competent.* the bearing, force and effect, when considered in

connection with the facts adduced on the trial, would have been as chaff before the wind." The italics are ours.

The rule thus referred to seems to have been held from the beginning. Fernandez v. State, 4 Texas App., 421; Peace v. State, 27 Texas App., 93, 10 S. W., 761; McFadden v. State, 28 Texas App., 243, 14 S. W., 128; Hammond v. State, 28 Texas App., 415, 13 S. W., 605; Abrigo v. State, 29 Texas App., 143, 15 S. W., 408. In Stacy v. State, 77 Texas Crim. Rep., 60, 177 S. W., 114, 119, this court quotes approvingly the statement and citation of authorities laid down by Judge White in his Annotated Crim. Procedure, at page 415, as follows:

"The court on appeal will not reverse a judgment on account of the refusal of a postponement or continuance unless in connection with the other evidence adduced on the trial they are impressed with the conviction, not merely that the defendant might probably have been prejudiced in his rights by such ruling, but that it was reasonably probable that if the absent testimony had been before the jury a verdict more favorable to the defendant would have resulted. Land v. State, 34 Texas Crim. Rep., 330 (30 S. W., 788); Gallagher v. State, 34 Texas Crim. Rep., 306 (30 S. W., 557); Easterwood v. State, 34 Texas Crim. Rep., 400 (31 S. W., 294); Sinclair v. State, 34 Texas Crim. Rep., 453 (30 S. W., 1070); Bluman v. State, 33 Texas Crim. Rep., 43 (21 S. W., 1027, 26 S. W., 75); Goldsmith v. State, 32 Texas Crim. Rep., 112 (22 S. W., 405); Hyden v. State, 31 Texas Crim. Rep., 401 (20 S. W., 764); Hammond v. State, 28 Texas App., 413 (13 S. W., 605); Pruitt v. State, 30 Texas Crim. Rep., 156 (16 S. W., 773); Frizzell v. State, 30 Texas Crim. Rep., 42 (16 S. W., 75); Ellis v. State, 30 Texas Crim. Rep., 601 (18 S. W., 139); Browning v. State, 26 Texas App., 432 (9 S. W., 770); Boyett v. State, 26 Texas App., 689 (9 S. W., 275); Covey v. State, 23 Texas App., 388 (5 S. W., 283); Self v. State, 28 Texas App., 398 (13 S. W., 602); Phelps v. State, 15 Texas App., 45."

This is the same rule adhered to by the court as now constituted in White v. State, 90 Texas Crim. Rep., 584, 236 S. W., 745. We might observe that if the trial court was compelled to grant a new trial because he had overruled an application for continuance based on the absence of witnesses whose testimony would be merely competent or admissible, or material to some collateral issue, which fact appeared upon the trial of the case, this would be laying down a rule the effect of which would be to materially hinder the due administration of justice. We are of opinion that the rule laid down in this regard by our predecessors should be adhered to by us, and that when an application for continuance is overruled, and the fact of such refusal is made a part of the ground of the motion for new trial, that such new trial should not be granted unless this court reviewing the case within its appellate jurisdiction, is satisfied

that the action of the trial court in the overruling of such motion for new trial amounted to an abuse of his discretion in determining in the first instance that had the absent testimony been present on the trial, no different result would have been likely.

We are not quite able to see the force of the exception leveled at paragraph ten of the court's charge, same being on the issue of self-defense. In substance said paragraph told the jury that if Drew Wiley killed deceased, but if the jury believed from the evidence, or had a reasonable doubt of the fact, that deceased had made an attack on Drew Wiley or appellant, or if the jury believed that it reasonably appeared from the standpoint of either Drew Wiley or appellant that deceased was about to make an attack on either of them, which from the manner and character of it, or the relative strength of the parties, or their knowledge or that of either of them of the character and disposition of the deceased, caused them or either of them to have a reasonable expectation or fear of death or serious bodily injury, and that under such circumstances Drew Wiley killed deceased, or under such circumstances appellant advised or encouraged by words Drew Wiley to do such killing, the jury should acquit. The testimony quoted, in appellant's motion for rehearing as given by himself and his daughter, tended pertinently to support the theory that at the time deceased was killed he had leveled his pistol at Drew Wiley and had accompanied this act by a threat. This would seem to show an attack already made, or at least one about to be made, and this would be covered by the charge excepted to.

We think the motion for rehearing should be overruled, and it is accordingly so ordered.

*Overruled.*