### PHILLIP EASLEY v. THE STATE.

No. 14477.    Delivered November 13, 1931.
Rehearing Denied December 23, 1931.

The case is stated in the opinion on Motion for Rehearing.

*Seb. F. Caldwell,* of Mt. Pleasant, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—Conviction for murder; punishment, five years in the penitentiary.

The facts need not be set out at length.  Two young men has the

temerity, at a dance in the country, to dance with each other as partners. Complaint of this led to a quarrel, followed by a fight. After a short interval the shooting of deceased by appellant occurred. The entire transaction was so connected and interwoven as that the things said and done during the first difficulty and between same and the fatal shooting appears parts of but one continuons transaction, and hence admissible.

Appellant asked for a continuance. It appears from the bill of exception and the qualification thereto, and the facts stated in the application, that two of the absent witnesse lived in the county of trial, and three in the adjoining county of Morris. The court certifies in his qualification to this bill of exception that no attachment was asked for said witnesses when their absence was discovered, but had it been asked he would have caused same to issue, and since the absent witnesses lived in the county and the adjoining county, it was the court's opinion that the attendance of said witnesses could have been secured. The record shows that the motion for continuance was made on February 4th, and that the trial took several days. We think the trial court correct in his conclusion that if an attachment had been asked for said absent witnesses, in all probability their presence could have been secured during the trial. There thus appears no diligence. Further it is shown that no affidavit of any of these witnesses was attached to the motion for new trial. On this point in the state's brief are cited Weaver v. State, 91 Texas Crim. Rep., 637, 240 S. W., 543; Cruz v. State, 100 Texas Crim. Rep., 188, 272 S. W., 486; Wiley v. State, 117 Texas Crim. Rep., 449, 36 S. W. (2d) 495. The overruling of the motion for new trial was correct.

Bills of exception Nos. 2, 3, 4, 6, 7, 8 and 9 relate to occurrences and matters transpiring shortly before the shooting and during and after the prior difficulty which led up without a break to the killing, and shed light thereon. It is doubtful if the several bills of exception sufficiently single out the matters therein objected to, but we have considered all of said bills and believe them without merit.

Bill of exception No. 5 sets out objection to proof that a short time before the killing appellant asked his son for a pistol, telling him "If he don't leave I will kill him". The objection was that this testimony showed no connection between the statement of appellant, and deceased, who was shot by appellant a few moments later. We find no facts stated in the bill showing that any other person than deceased was in the mind of appellant, or could have been at the time he made the remark. Being followed shortly by the shooting of deceased, its relevance is apparent. We think the record shows that the threat was aimed at deceased. This bill as qualified shows no error. This disposes of the various matters complained of.

The judgment will be affirmed.

*Affirmed.*

## ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—Appellant's motion has made it necessary to carefully re-examine the facts. Only through familiarity with them can the bills of exception be appraised. It is difficult to follow through the mass of testimony the movements of the principals and other parties more or less intimately connected with the events which transpired on the occasion of the homicide. This becomes correspondingly more difficult as the evidence of the state and appellant regarding the material incidents are in direct conflict. If the evidence of appellant and that of his witnesses be accepted as true, then some of his objections to certain testimony might raise serious questions, but in determining the admissibility of evidence the case must be viewed in its entirety and not from one side only.

Appellant killed John T. (Buck) Ellis. The killing occurred at the home of Raymond Easley, where a dance had been given. Appellant was the father of Raymond and lived about three miles from his son. The relations between appellant and deceased appear to have been friendly, deceased having visited appellant's house to see his daughters. On the night of the dance deceased brought some whisky with him and secreted the bottles some distance from the house. He, appellant and others had more than one drink before any trouble arose. The first disturbance was occasioned by deceased and Roy Gentry dancing together. Raymond protested, because he thought the boys should dance with the girls. Deceased left the house and in a few minutes he and Sam Murphy, a cousin of Raymond's, engaged in a fist fight. State's witnesses swore that during this fight appellant came on the scene and struck at deceased with a pistol but struck Murphy instead. This was denied by appellant and his witnesses. After the fight deceased and Murphy went to the creek to wash their faces. A number of other parties were down in that locality, among them being appellant. A young man whom we take was named Barwise —called by some witnesses, Barbed-Wire Wise,—came down the hill singing a song which appellant evidently disliked and resented. Over appellant's objection it was proven by state's witnesses that he made a threat against Barwise, either to "kill" him, or to "shoot hell" out of him, and fired his pistol, some witnesses say, towards Barwise, others say down toward the ground. A state's witness swears when this occurred he took the pistol from appellant and gave it to his son Raymond. This was denied by appellant, Raymond and others of appellant's witnesses. Some time later—and it is impossible from the facts to know just how long,— when the party was breaking up and most of the guests had apparently gone, deceased and some other parties were experiencing some trouble in getting a car started. Deceased was evidently doing considerable promiscuous swearing, and some of appellant's witnesses claim that he was directing his remarks towards appellant. Some state's witnesses claim that deceased was leaving and was called back to the house, but this is denied

by appellant and his witnesses. State's witnesses testify that appellant asked Raymond where the pistol was and was told it was at the barn, and claim appellant said if the s— of a b— didn't leave he would kill him. This threat and conversation was also denied by appellant and his witnesses. Appellant and deceased did come close together, and each seems to have told the other not to come any closer. State's witnesses swear that at the time appellant shot deceased the latter was doing nothing. On the other hand, it was appellant's contention, supported by his evidence and that of his witnesses, that deceased was armed with a knife and had made and was making an effort to cut him when he was shot by appellant.

The foregoing statement of the conflicting facts is sufficient upon which to predicate a discussion of the several bills of exception. Proof of the difficulty between deceased and Murphy was rendered admissible by the state's testimony that during the fight appellant struck at deceased with a pistol.

A number of bills of exception are found to testimony of various witnesses regarding the claimed threat appellant made towards Barwise and to proof that appellant fired his pistol on that occasion, the objection being that deceased was in no wise connected with that transaction, and that it was permitting evidence of other offenses having no connection with that for which appellant was upon trial, and not coming within any exception to the rule excluding such evidence. Giving full effect to the rule that extraneous crimes should not be admitted, unless they do come within one of the exceptions, we are still inclined to the view that the court committed no error under the facts disclosed in the present record in permitting the testimony complained of to go to the jury. The pistol with which the killing was done was evidently the same pistol used on the occasion of the Barwise incident and by the state's witnesses shown to have been taken from appellant at that time and delivered to his son Raymond. The state had a right to trace the instrument with which the killing was done and to show appellant's connection therewith; the fact that the evidence was conflicting upon the point whether the pistol was taken from appellant and given to his son would not render the evidence complained of inadmissible. This evidence was evidently admitted by the learned trial judge upon the theory that it threw light upon the frame of mind of appellant and his attitude generally upon the night of the homicide. If the state's evidence is to be believed, it appears that appellant had assumed the task of censoring the conduct of guests at the dance although he did not live there, and resented any conduct on their part which to him appeared improper. This fact throws light upon the solution of another question raised by objection to proof of the threat claimed to have been made by appellant immediately before the killing to the effect that he would kill the s— of a b— if he did not leave, the objec-

tion being that it was not shown to have been directed towards deceased. At that time, even from the standpoint of appellant and his witnesses, no one was engaged in any misconduct which was objectionable except deceased. It was proper, therefore, to prove appellant's prior attitude in order that the jury might determine whether under all the facts, the threat attributed to him was directed towards deceased.

The case seems to present a situation in which the general principle stated in section 154, 3d Ed., Underhill's Crim. Ev. becomes applicable: "All evidence is relevant which throws, or tends to throw, any light upon the guilt or the innocence of the prisoner. And relevant evidence which is introduced to prove any material fact ought not to be rejected merely because it proves, or tends to prove, that at some other time or at the same time the accused had been guilty of some other separate, independent and dissimilar crime. The general rule is well settled that all evidence must be relevant. If evidence is relevant upon the general issue of guilt, or innocence, no valid reason exists for its rejection merely because it may prove, or may tend to prove, that the accused committed some other crime, or may establish some collateral and unrelated fact."

After a careful review of the facts in connection with the bills of exception we remain of the opinion that no error was committed by the court, in the respects complained of, and that the motion for rehearing should be overruled, and it is accordingly so ordered.

*Overruled.*