JIM CROSSLAND v. THE STATE.

No. 18914. Delivered May 5, 1937.
Rehearing Denied October 13, 1937.

The opinion states the case.

*Baker & Baker*, of Coleman, for appellant.

*A. O. Newman*, District Attorney, of Coleman, and *Lloyd W. Davidson*, State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—Conviction for swindling; punishment, two years in the penitentiary.

Appellant had a Ford car. It was mortgaged to secure the amount of $367.00. The date of this mortgage was February 5, 1936. Saunders had a Chevrolet car for which he wanted around $500.00. Appellant seems to have agreed to buy the Chevrolet provided Saunders would allow him $200.00 for his Ford car. The parties signed a contract for a conditional sale, it, too, being of date February 5, 1936, and recited that the Chevrolet was to be sold to appellant for $504.00, of which $200.00 was to be paid by appellant on or before delivery to him of the said Chevrolet car. Saunders testified that he got certain information from appellant, prior to the consummation of the trade, in the form of a purchaser's statement, and when they came to the blank showing what appellant owed and what property he had appellant said he did not owe anything except he would owe some $200.00 on a lease in the fall. We quote from Saunders' testimony as follows:

"I believed what he told me that that was all the money that he owed. If I had known that Jim Crossland was indebted to M. K. Witt Motor Company, and that they had a mortgage on the Ford car which he was trading to me I would not have sold, traded or delivered him the Chevrolet automobile that I had sold him according to this conditional sales contract.

"I did not know that there was a mortgage on that Ford car at that time. From what he told me I believed that there was not a mortgage on it. At the time in question, on February 5th this year I traded from him a Ford car. That was traded to me as a down payment and there was a $460.00 car that we were trading him. The insurance and carrying charges came to $54.00."

Appellant gave to Saunders a written bill of sale for said

Ford car. He delivered same to Saunders and received in exchange the Chevrolet car above referred to. A week or ten days later it was discovered that the Ford car traded in by appellant was mortgaged to secure the amount of $367.00, and the mortgagee took possession of the said Ford car, whereupon Saunders repossessed himself of the Chevrolet car.

There are two or three counts in the indictment, one of which was quashed, and the others seem sufficient. Appellant complains of the refusal of an application for continuance made because of the absence of his wife, alleged to be sick, and also because of the absence of one McGee. It was frankly admitted in the application that appellant did not know where the last named witness lived, and for that reason had not had process issued for him. Appellant also had had no process issued for his wife, and said that he expected her to be present at the trial. In setting up the fact of her sickness in the application, it is only stated that on Wednesday night, September 16, 1935, owing to the excessive rain his wife got wet, chilled and was confined to her bed and room, and was unable to attend court for said reason. No certificate of any doctor was attached, nor was there any testimony presented to the court regarding the illness of said wife other than the statement in the application for continuance. We think the application for continuance correctly overruled, and especially so in view of the fact that on the day following this trial appellant's said wife came to Coleman and appeared before a notary public, and there made an affidavit in support of appellant's motion for new trial. We might further observe that the only thing appellant seems to have expected in testimony from his wife, had she been present, was the fact that he was possessed of seven hundred bushels of oats at the time he traded cars. We note that when appellant testified, he claimed to have had about six hundred and sixty bushels of oats which he admitted were worth about twenty cents a bushel in Coleman at the time of this alleged transaction. The alleged purpose of this testimony was in order that it might be taken as substantiating appellant's claim that he purposed to sell the oats and to apply the proceeds to the extinguishment of the debt against the Ford car, which he represented to be clear of debt. In support of this theory appellant testified, while a witness in the case, that he had several hundred bushels of oats, and that he hired a man named McGee to take them to Kerrville and sell them, and that McGee did haul three loads, averaging around two hundred and twenty bushels to the load, and sold them to some man whose name appellant could not re-

member, but who gave McGee a check on a bank which appellant could not cash because the man had no money in the bank. Appellant said McGee then hauled the oats back and put them in his, appellant's, barn. As far as this record shows they are still in appellant's barn, because no effort appears further to sell them, if indeed appellant ever possessed them. Oats are tangible things, and if appellant had them it would not appear to be difficult for him to have established by the testimony of some one else that he in fact had said oats. We see no error in the action of the trial court in refusing the application for continuance, nor in refusing the motion for new trial based on the fact of the refusal of a continuance. On the trial appellant was unable to tell where McGee could be found, nor could he tell the amount of any check McGee brought him in payment of the oats referred to, nor the name of the party who was supposed to have signed the check. Appellant also testified that a man named Atterholt hauled some cattle to Fort Worth for him, and that he told Atterholt to bring the check received for the cattle and give it to the holder of the mortgage on the Ford car. The State put Atterholt on the witness stand, and he swore he never hauled any cattle to Fort Worth for appellant, nor any cattle in which appellant was interested, and that appellant never told him at any time to take the check to the party who held the mortgage on said Ford car.

Appellant, on cross-examination, admitted that when he traded the Ford car in question to Saunders he knew there was a mortgage on it, and that the mortgage had not been paid off, and while he did not know the exact amount of the indebtedness secured thereby, he would not deny it was $367.00. M. K. Witt testified that was the amount of the mortgage on the Ford car at the time.

We have carefully gone over each contention appearing in the record on behalf of appellant, and find ourselves unable to agree that any of them are well taken, or that they find support in law or in fact.

The judgment will be affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—In a vigorous motion for rehearing appellant attacks the correctness of the disposition of his complaint at the refusal of a second continuance, and the subsequent overruling of his motion for new trial predicated on such refusal.

Appellant seems to think our disposition of the question originally turned upon the fact that appellant had not secured process for his wife but was relying only on her promise to be present. It was not our intention to leave such an impression, in view of authorities to the contrary. The question was disposed of upon the ground that considering the case in its entirety after having heard all the evidence in the case the trial court was justified in denying the new trial in so far as it was predicated on the refusal of the second application for continuance. Appellant, however, urges that we were wrong in such holding in view of the fact that an affidavit of the wife that she would have testified as set out in the application was attached to the motion for new trial. The contention here made by appellant is the precise point urged in Wiley v. State, 117 Texas Crim. Rep., 449, 36 S. W. (2d) 495, reliance being on the opinions in White v. State, 90 Texas Crim. Rep., 584, 236 S. W., 745; Cruz v. State, 100 Texas Crim. Rep., 188, 272 S. W., 486; Tubb v. State, 109 Texas Crim. Rep., 458, 5 S. W. (2d) 150, and others of similar holding. All of the cases referred to were considered while Wiley's case was under submission. In the opinion on rehearing in the latter case, after reference to many former cases, is found the following statement:

"We are of opinion that the rule laid down in this regard by our predecessors should be adhered to by us, and that when an application for continuance is overruled, and the fact of such refusal is made a part of the ground of the motion for new trial, that such new trial should not be granted unless this court, reviewing the case within its appellate jurisdiction, is satisfied that the action of the trial court in overruling of such motion for new trial amounted to an abuse of his discretion in determining in the first instance that, had the absent testimony been present on the trial, no different result would have been likely."

In Barfield v. State, 118 Texas Crim. Rep., 394, 43 S. W. (2d) 106, the same question was again presented and Wiley's case followed, the language in Barfield's case being as follows:

"We cannot bring ourselves to believe that under the whole case the trial court can be said to have abused his discretion in overruling the motion for new trial based upon his refusal to grant the continuance. This subject was discussed at length in the recent case of Wiley v. State (Texas Crim. Rep.), 36 S. W. (2d) 495, and many of the older cases were reviewed and cited. We cannot believe it reasonably probable that if the absent testimony had been before the jury a verdict more favorable to appellant would have resulted."

Such is the effect of our holding in the original opinion in the present case. See also Fox v. State, 119 Texas Crim. Rep., 552, 43 S. W. (2d) 951; Johnson v. State, 128 Texas Crim. Rep., 12, 78 S. W. (2d) 965; Myres v. State, 129 Texas Crim. Rep., 468, 88 S. W. (2d) 109, all of which followed the Wiley case (supra).

Again considering the entire record we conclude that appellant's motion for rehearing should be overruled and it is so ordered.

*Overruled.*